UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JIMMIE JOHNSON #146311 ,

        Plaintiff,                                  Case No. 2:08-cv-28

v.                                                    Honorable R. Allan Edgar

UNKNOWN SOMERO, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, I recommend that Plaintiff's complaint be dismissed for failure to state a claim.

**Discussion**

I.      Factual allegations

Plaintiff Jimmie Johnson, an inmate at the Marquette Branch Prison (MBP), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Corrections Officer Unknown Somero and Unknown Hornick, R.N. Plaintiff alleges in his complaint that on August 11, 2006, while Plaintiff was incarcerated in the segregation unit, he passed out in his cell due to dehydration as a result of being on a fast. Officers came to Plaintiff's cell and the Emergency Response Team (ERT) was called to remove Plaintiff from his cell. Plaintiff was covered with a shield, extracted from his cell, and taken to health services.

Plaintiff alleges that while he was in health services, Defendant Somero told Defendant Hornick that he had seen Plaintiff place feces in his hair on a prior occasion and that he wanted a plastic bag placed over Plaintiff's hair. Plaintiff states that he did not have any feces in his hair and that his dreadlocks were part of his religious practice. At this point, Defendant Hornick retrieved a bio-hazard bag and placed it over Plaintiff's head and secured it with tape. Defendant Somero then stated that Plaintiff had tried to cut himself with razor blades and that he was nothing but a piece of shit and he did not know why they had to "do this."

Plaintiff attaches copies of the his grievances and responses to his complaint as exhibits. The step I grievance response to AMF-06-08-02750-17A addresses the issue of Plaintiff's transport to the hospital:

> RUO Somero was not in unit one at that time the grievant was being prepared to be transported to BCHM. RUO Majurin was present in unit one at the time the grievant was being prepared to be transported. As RUO Majurin was searching the grievants [sic] hair, as part of the strip search, he could smell the odor of feces and observed feces

> matted with hair fall [sic] from the grievants [sic] hair. RN Hornick placed a clear BIO Hazard bag over the grievants [sic] hair to contain the three foot hair ropes from catching in the gurney while being transported and to protect transporting staff and BCMH staff from the obvious feces contaminated dreadlocks. RUO Somero was a member of the transportation team and was assigned to chase vehicle. RUO Somero states while at the hospital he was asked by the hospital staff why the grievant had a plastic bag covering his hair. RUO Somero explained the situation to the hospital staff and made none of the comments or has spread any rumors that the grievant claims in this grievance.

(*See* Step I Grievance Response to AMF-06-08-02750-17A, dated September 13, 2006.) Plaintiff's appeals to this response were denied at steps II and III.

Plaintiff claims that he suffered from extreme pain in his head and neck due to the unorthodox way that Defendant Hornick taped the plastic bag to Plaintiff's skin on his forehead and the surrounding area. Plaintiff alleges that he complained over a period of hours about the pain and how tight the tape was, but that nothing was done to address the problem. On August 21, 2006, Plaintiff was forcibly removed from his cell and told that he must take a shower because L. T. Kostinen had been told that Plaintiff put feces in his hair. Plaintiff assured Kostinen that this was not the case. Plaintiff was then escorted to the counselor's office to speak to the Warden, where he explained that he was being harassed about his hair because it was an integral part of his religion.

Plaintiff states that on September 24, 2006, he began to notice that he was experiencing severe headaches along with the neck pain and that they continued to intensify as the days progressed. Plaintiff continued to request medical treatment, to no avail. According to the step III grievance response to AMF-06-10-03611, which is attached to Plaintiff's complaint:

> The information presented upon appeal to step III has been reviewed in addition to the medical record. The step I and step II responses appropriately address the grievance. The record reflects that the

>       grievant submitted health care kites and was instructed to purchase
>       medicine from the store.  When he re-submitted, he did not indicate
>       if he had or had not followed those instructions.  As noted in the step
>       II, grievant has been evaluated and instructed again to purchase
>       medication from the prisoner store.  Allegation [sic] of discrimination
>       or retaliation are unfounded.  Grievant was educated that the length
>       of his hair may be the cause of his headaches.

(*See* Step I Grievance Response to AMF-06-10-03611, dated February 8, 2007.) Plaintiff claims that Defendants violated his First, Eighth and Fourteenth Amendment rights.  Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

        II.      <u>Failure to state a claim</u>

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint.  *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff contends that the Defendants violated his First Amendment right to freely practice his religion by requiring him to wear a plastic bag over his dread locks.  Plaintiff claims that his dread locks are integral to his religious beliefs.  Prisoners do not lose their right to freely exercise their religion by virtue of their incarceration.  *Cruz v. Beto*, 405 U.S. 319, 322, n. 2 (1972).  Freedom of religion being a fundamental right, any regulation which infringes upon it must generally be

justified by a "compelling state interest.". *See*, *for example*, *Wisconsin v. Yoder*, 406 U.S. 205 (1972). However, as a prisoner, Plaintiff's constitutional rights are subject to severe restriction. *See*, *for example*, *Bell v. Wolfish*, 441 U.S. 520 (1979) (restriction on receipt of reading materials); *Hudson v. Palmer*, 468 U.S. 517 (1984) (privacy); *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974) (right to call witnesses); *Richardson v. Ramirez*, 418 U.S. 24 (1974) (vote). *See*, *generally*, *Washington v. Harper*, 494 U.S. 210 (1990); *Turner v. Safley*, 482 U.S. 78 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987). However, Plaintiff fails to explain how the requirement that he wear a plastic bag over his hair prevented him from practicing his religious beliefs. Therefore, in the opinion of the undersigned, Plaintiff's First Amendment claim is properly dismissed.

Plaintiff claims that he is being harassed about his dread locks because of his religious beliefs. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Plaintiff's allegations on this point are wholly conclusory. Plaintiff merely claims that he was required to wear a plastic covering over his hair when he was taken to the hospital because of a desire to discriminate against him based on his religion. However, Plaintiff provides no specific factual allegations to support his contention. Rather, a review of the record supports the conclusion that Defendants feared that Plaintiff's hair was contaminated with feces. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir.1996) (citing *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986));

*Smith v. Rose*, 760 F.2d 102, 106 (6th Cir.1985); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000).

Finally, Plaintiff claims that Defendants' conduct violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-601 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or

non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results

in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also*, *Brock v. Crall*, No. 00-5914, 2001 WL 468169, at *2 (6th Cir. Apr. 27, 2001); *Jones v. Martin*, No. 00-1522, 2001 WL 223859, at *1 (6th Cir. Feb. 28, 2001); *Williams v. Mattson*, No. 99-1796, 2000 WL 924145, at *1 (6th Cir. June 28, 2000); *Davis v. Ulep*, No. 97-2124, 1999 WL 98390, at *1 (6th Cir. Jan. 29, 1999); *Cain v. Huff*, No. 96-1613, 1997 WL 377029, at * 4 (6th Cir. July 2, 1997); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at * 2 (6th Cir. Apr. 4, 1997). As noted above, the attachments to Plaintiff's complaint reveal that he was evaluated for his headaches and pain, and that he was instructed to purchase over the counter medications. Therefore, it is clear that Plaintiff has received some medical attention and the dispute is over the adequacy of the treatment. Accordingly, the undersigned recommends dismissal of Plaintiff's Eighth Amendment claim regarding the denial of medical care.

Moreover, the placement of a plastic bag over Plaintiff's hair during his trip to the hospital constitutes no more than a mere discomfort or inconvenience. *Hudson*, 503 U.S. at 9-10 (requiring "extreme" or "grave" deprivation); *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989), *cert. denied*, 493 U.S. 969 (1989); *Harris v. Fleming*, 839 F.2d 1232, 1235-36 (7th Cir. 1988).

Therefore, in the opinion of the undersigned, this claim does not rise to the level of an Eighth Amendment violation.

### Recommended Disposition

Having conducted the review now required by the Prison Litigation Reform Act, I recommend that Plaintiff's complaint be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Should this report and recommendation be adopted, the dismissal of this action will count as a strike for purposes of 28 U.S.C. § 1915(g).

I further recommend that the Court find no good-faith basis for appeal within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   May 30, 2008

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).